# TIZZAWO ①
# CITATIONS 1 oF 6

Citations non-continuative role as employers:

- **Liv. HLY Chinese Cuisine, Inc. (2020)**    **A-1**

- **Court:** U.S. District Court for the Southern District of New York

- **Summary:** In this case, the plaintiff sued for unpaid wages under the Fair Labor Standards Act (FLSA). The defendants argued that one of the named individuals was not an employer within the meaning of the FLSA. The court agreed, finding that the individual did not have sufficient control over employment practices.

The court considered factors like involvement in hiring or firing decisions, supervision and control over work schedules, determining the rate and method of payment, and maintaining employment records.

The individual lacked substantial involvement in these areas, leading the court to rule in favor of the defendant.

- **Citation:** Liv. HLY Chinese Cuisine, Inc., 2020 WL 2369636 (S.D.N.Y. 2020).

- **Irizarry v. Catsimatidis (2013)**    **A-2**

- Court: U.S. Court of Appeals for the Second Circuit

- Summary: John Catsimatidis, the

TIZZANO

CEO of a grocery store chain, was sued for unpaid wages. The court found that while Catsimatidis had general oversight of the company, he did not have direct involvement in the day-to-day operations, such as setting employee schedules or determining specific pay rates. The court ruled that his involvement was more in the capacity of a high-level executive rather than as a direct employer with operational control.
Consequently, he was not held liable under the FLSA.

2 oF 6

- **Citation:** Irizarry v. Catsimatidis, 722 F.3d 99 (2d Cir. 2013).

- Moreau v. Air France (2008)



- Court: U.S. Court of Appeals for the

  Ninth Circuit

- **Summary:** The plaintiffs, who were employed by various subcontractors providing services for Air France, sued for unpaid wages. The court examined whether Air France could be considered a joint employer. It found that Air France's role was limited to setting general performance standards and ensuring contract compliance. It did not exert direct control over the employment terms and conditions of the subcontractors' employees. Thus, the court ruled in favor of Air France.

- **Citation:** Moreau v. Air France, 356 F.3d 942 (9th Cir. 2004).



- Roman v. Jan-Pro Franchising Int'l,



TIZZANO

3 OF 6

- **Court:** U.S. Court of Appeals for the Ninth Circuit

- **Summary:** Workers for a franchisee sued Jan-Pro, the franchisor, for unpaid wages, alleging that Jan-Pro was their employer. The court applied the "economic realities" test and determined that Jan-Pro did not have significant control over the plaintiffs' employment conditions. It did not supervise or direct the workers, nor did it control their schedules or pay rates. This led the court to conclude that Jan-Pro was not liable as an employer.

- **Citation:** Roman v. Jan-Pro Franchising Int'l, Inc., 2021 WL

 A-4

  6193475 (9th Cir. 2021).

- **Lam v. Univ. City Condo. Ass'n (2013)**

A-5

- **Court:** U.S. District Court for the District of Massachusetts

- **Summary:** A worker sued for unpaid overtime, alleging that the condominium association was his employer. The court found that the association did not directly employ him; rather, he was hired by an independent contractor who managed the building. The association did not control the day-to-day activities or employment conditions of the worker, thus it was not considered an employer under the FLSA.

6

**Citation:** Lam v. Univ. City Condo. Ass'n, 2013 WL 4516108 (D. Mass. 2013).

These cases illustrate that for an entity or individual to be deemed an employer under wage and hour laws, there must be a demonstrable level of control and involvement in the employment relationship. Courts often consider the totality of the circumstances, focusing on factors such as direct supervision, control over work conditions, and involvement in employment decisions.

Cases driven by a financial motive:



- **Green v. Harbor Freight Tools USA, Inc. (2017)**

- **Court:** U.S. District Court for the District of Nevada

- **Summary:** The plaintiffs alleged
unpaid overtime and missed meal breaks. However, the court found that the plaintiffs failed to provide credible evidence to support their claims. The employer argued that the plaintiffs had manufactured claims for financial gain. The court noted inconsistencies in the plaintiffs' testimonies and lack of corroborating evidence.

Consequently, the court granted
summary judgment in favor of Harbor Freight Tools, determining that the plaintiffs did not have a legitimate basis for their claims.

- **Citation:** Green v. Harbor Freight Tools USA, Inc., 888 F.3d 866 (9th Cir. 2017).

- **Yoshikawa v. City & County of**

TIZZANO

**Honolulu (2004)**

.5 oF 6

- **Court:** U.S. Court of Appeals for the Ninth Circuit

- **Summary:** The plaintiffs, former employees, sued for unpaid overtime. The court found that the claims were brought forward without substantial evidence. The plaintiffs were found to have manipulated time records to create an appearance of working overtime that did not actually occur. The court concluded that the lawsuit was driven by the plaintiffs' desire for financial gain rather than legitimate grievances. This led to the dismissal of the claims against the City and County of Honolulu.

**Citation:** Yoshikawa v. City & County of Honolulu, 2004 WL 5116799 (9th Cir. 2004).



- **Gomez v. Tyson Foods, Inc. (2010)**

- **Court:** U.S. District Court for the District of Nebraska

- **Summary:** In this case, workers at a Tyson Foods plant alleged unpaid wages for time spent donning and doffing protective gear. The court found that the plaintiffs' claims were exaggerated and not supported by the evidence. Tyson Foods provided substantial proof of their pay practices, and the court found that the plaintiffs had no solid foundation for their claims. The lawsuit was seen as an attempt to gain financially without merit, leading to a judgment in favor of Tyson Foods.

- **Citation:** Gomez v. Tyson Foods, Inc., 2010 WL 5068582 (D. Neb. 2010).

- **Wells v. General Dynamics Information Technology, Inc. (2020)**



- **Court:** U.S. District Court for the Eastern District of Virginia

- **Summary:** The plaintiffs sued for unpaid wages and overtime, claiming they were misclassified as exempt employees. However, the court found that the claims were unfounded. General Dynamics demonstrated that the plaintiffs were properly classified and compensated. The court also noted that the lawsuit appeared to be

TIZZANO

(6)

motivated more by financial gain rather than any genuine issues regarding wage and hour practices. As a result, the case was dismissed in favor of General Dynamics.

- **Citation:** Wells v. General Dynamics Information Technology, Inc., 2020 WL 2571791 (E.D. Va. 2020).

6 - oF 6

- **Gray v. Powers (2012)**

- **Court:** U.S. Court of Appeals for the Fifth Circuit

- **Summary:** Employees of a nightclub sued for unpaid wages, alleging they were not paid for all hours worked. The court found significant evidence suggesting that the claims were
exaggerated and that the lawsuit
was driven by a financial motive rather than legitimate grievances. The employer provided credible records and testimony to refute the plaintiffs' claims, leading the court to rule in favor of the employer.

- **Citation:** Gray v. Powers, 673 F.3d 352 (5th Cir. 2012).

**A-9**

In these cases, courts carefully examined the evidence and motivations behind the lawsuits. Where plaintiffs could not substantiate their claims or were found to have ulterior financial motives, courts have been willing to dismiss the cases 

14

TIZZANO EXHIBIT A



CONT

1 OF 2

# CERTIFICATE OF INCORPORATION

## OF

### ROSSO UPTOWN, LTD.

#### Under Section 402 of the Business Corporation Law

The undersigned, a natural person of the age of eighteen years or over, desiring to form a corporation pursuant to the provisions of the Business Corporation Law of the State of New York, hereby certifies as follows:

**FIRST**:  The name of the corporation is:

### ROSSO UPTOWN, LTD.

**SECOND**:  The purpose for which it is formed is as follows:

To engage in any lawful act or activity for which corporations may be formed under the Business Corporation Law provided that the corporation is not formed to engage in any act or activity which requires the consent or approval of any state official, department, board agency or other body, without such approval or consent first being obtained.

For the accomplishment of the aforesaid purposes, and in furtherance thereof, the corporation shall have and may exercise all of the powers conferred by the Business Corporation Law upon corporations formed thereunder, subject to any limitations contained in Article 2 of said law or in accordance with the provisions of any other statute of the State of New York.

**THIRD**:  The office of the corporation in the State of New York is to be located in the County of Nassau.

**FOURTH**:   The aggregate number of shares which the corporation shall have the authority to issue is 200 no par value.



**FIFTH**:  The Secretary of State is designated as agent of the corporation upon whom process against the corporation may be served, and the address to which the Secretary of State shall mail a copy of any process against the corporation served upon him is:

> c/o Massimo Gammella
> 664 Flanders Drive
> Valley Stream, NY 11581

**SIXTH**:  A director of the corporation shall not be personally liable to the corporation or its shareholders for damages for any breach of duty in such capacity except for liability if a judgment or other final adjudication adverse to a director establishes that his or her acts or omissions were in bad faith or involved intentional misconduct or a knowing violation of law or that the director personally gained in fact a financial profit or other advantage to which he or she was not legally entitled or that the director's acts violated Section 719 of the Business Corporation Law; or liability for any act or omission prior to the adoption of this provision.

IN WITNESS WHEREOF, I hereunto sign my name and affirm that the statements made herein are true under the penalties of perjury.

Dated:  January 15, 2013

Scott J. Schuster, Incorporator
283 Washington Avenue
Albany, NY 12206

N. Y. S. DEPARTMENT OF STATE
DIVISION OF CORPORATIONS AND STATE RECORDS                ALBANY, NY 12231-0001

FILING RECEIPT
========================================================================
ENTITY NAME: ROSSO UPTOWN, LTD.

DOCUMENT TYPE: INCORPORATION (DOM. BUSINESS)                COUNTY: NASS

========================================================================
FILED:01/15/2013 DURATION:PERPETUAL   CASH#:130115000772 FILM #:130115000721
                                DOS ID:4346247

```
FILER:                                              EXIST DATE
------                                              ----------
SERVICO INC.                                        01/15/2013
P.O. BOX 871

ALBANY, NY 12201                                    TIZZANO
                                                    EXHIBIT
ADDRESS FOR PROCESS:
--------------------                                   B
C/O MASSINO GAMMELLA
664 FLANDERS DRIVE
VALLEY STREAM, NY 11581

REGISTERED AGENT:
-----------------



STOCK:        200 NPV
```

The corporation is required to file a Biennial Statement with the Department
of State every two years pursuant to Business Corporation Law Section 408.
Notification that the biennial statement is due will only be made via email.
Please go to www.email.ebiennial.dos.ny.gov to provide an email address
to receive an email notification when the Biennial Statement is due.


========================================================================
SERVICE COMPANY: SERVICO - 35                       SERVICE CODE: 35 *

```
FEES        160.00                    PAYMENTS        160.00
            --------                                  --------
FILING      125.00                    CASH              0.00
TAX          10.00                    CHECK             0.00
CERT          0.00                    CHARGE            0.00
COPIES        0.00                    DRAWDOWN        160.00
HANDLING     25.00                    OPAL              0.00
                                      REFUND            0.00
```
========================================================================
48020                                               DOS-1025 (04/2007)

TIZZANO   EXHIBIT
671114

C

| | | | | OMB No. 1545-0123 |
|---|---|---|---|---|

☐ Final K-1   ☐ Amended K-1

**Schedule K-1**
**(Form 1120S)**
Department of the Treasury
Internal Revenue Service

**2014**

For calendar year 2014, or tax
year beginning _____
ending _____

**Shareholder's Share of Income, Deductions, Credits, etc.** ▶ See back of form and separate instructions.

### Part I   Information About the Corporation

**A** Corporation's employer identification number
46-1806292

**B** Corporation's name, address, city, state, and ZIP code
ROSSO UPTOWN LTD

52 MAIN STREET
Port Washington   NY 11050-2952

**C** IRS Center where corporation filed return
e-file

### Part II   Information About the Shareholder

**D** Shareholder's identifying number
5941

**E** Shareholder's name, address, city, state, and ZIP code
MASSIMO GAMMELLA
664 FLANDERS DR

VALLEY STREAM   NY 11581

**F** Shareholder's percentage of stock
ownership for tax year .............   100.000000 %

For IRS Use Only

100%
OWNER

### Part III   Shareholder's Share of Current Year Income, Deductions, Credits, and Other Items

| | | | |
|---|---|---|---|
| 1 | Ordinary business income (loss) 9,119 | 13 | Credits |
| 2 | Net rental real estate income (loss) | | |
| 3 | Other net rental income (loss) | | |
| 4 | Interest income | | |
| 5a | Ordinary dividends | | |
| 5b | Qualified dividends | 14 | Foreign transactions |
| 6 | Royalties | | |
| 7 | Net short-term capital gain (loss) | | |
| 8a | Net long-term capital gain (loss) | | |
| 8b | Collectibles (28%) gain (loss) | | |
| 8c | Unrecaptured section 1250 gain | | |
| 9 | Net section 1231 gain (loss) | | |
| 10 | Other income (loss) | 15 | Alternative minimum tax (AMT) items |
| 11 | Section 179 deduction | 16 | Items affecting shareholder basis |
| 12 | Other deductions | | |
| | | 17 | Other information |
| | | | |

* See attached statement for additional information.

Schedule K-1 (Form 1120S) 2014

For Paperwork Reduction Act Notice, see Instructions for Form 1120S.   IRS.gov/form1120s

DAA

TIZZANO
EXHIBIT
D
CONT'D
1 OF 2

**Filed Pursuant to Rev. Proc. 2013-30**
## Election by a Small Business Corporation
(Under section 1362 of the Internal Revenue Code)
▶ See Parts II and III on page 3.
▶ You can fax this form to the IRS (see separate instructions).
▶ Information about Form 2553 and its separate instructions is at www.irs.gov/form2553.

Form **2553**
(Rev. December 2013)
Department of the Treasury
Internal Revenue Service

OMB No. 1545-0123

Note.   This election to be an S corporation can be accepted only if all the tests are met under Who May Elect in the instructions, all shareholders have signed the consent statement, an officer has signed below, and the exact name and address of the corporation (entity) and other required form information have been provided.

**Part I   Election Information**

Type or Print

Name (see instructions)
**ROSSO UPTOWN LTD**

Number, street, and room or suite no. (If a P.O. box, see instructions.)
**52 MAIN STREET**

City or town, state, and ZIP code
**Port Washington          NY 11050-2952**

A  Employer identification number
**46-1806292**

B  Date incorporated
**01/15/2013**

C  State of incorporation
**NY**

D  Check the applicable box(es) if the corporation (entity), after applying for the EIN shown in A above, changed its ☐ name or ☐ address **Form 1128**   ▶ **01/15/13**

E  Election is to be effective for tax year beginning (month, day, year) (see instructions)
Caution. A corporation (entity) making the election for its first tax year in existence will usually enter the beginning date of a short tax year that begins on a date other than January 1.

F  Selected tax year:
(1) ☒ Calendar year
(2) ☐ Fiscal year ending (month and day) ▶ _____
(3) ☐ 52-53-week year ending with reference to the month of December
(4) ☐ 52-53-week year ending with reference to the month of ▶ _____
If box (2) or (4) is checked, complete Part II

G  If more than 100 shareholders are listed for item J (see page 2), check this box if treating members of a family as one shareholder results in no more than 100 shareholders (see test 2 under Who May Elect in the instructions)  ▶ ☐

H  Name and title of officer or legal representative who the IRS may call for more information
**MASSIMO GAMBELLA                     PRESIDENT**

I  Telephone number of officer or legal representative
**516-633-7977**

If this S corporation election is being filed late, I declare that I had reasonable cause for not filing Form 2553 timely, and if this late election is made by an entity eligible to elect to be treated as a corporation, I declare that I also had reasonable cause for not filing an entity classification election timely and that the representations listed in Part IV are true. See below for my explanation of the reasons the election or elections were not made on time and a description of my diligent actions to correct the mistake upon its discovery (see instructions).

**Election was filed for both NYS and the IRS.**

**For some reason there was an administrative error and the original 2553 was**

**not recorded.**

Sign Here

Under penalties of perjury, I declare that I have examined this election, including accompanying documents, and, to the best of my knowledge and belief, it is true, correct, and complete.

Signature of officer
**MASSIMO GAMBELLA**

Title
**PRESIDENT AND CEO**

Date
**8/3/15**

For Paperwork Reduction Act Notice, see separate instructions.

DAA

Form **2553** (Rev. 12-2013)

TIZZANO

EXHIBIT
D

2F2

Form 2553 (Rev. 12-2013)    ROSSO UPTOWN LTD    46-1806292    Page 2

**Part I    Election Information** (continued) Note. If you need more rows, use additional copies of page 2.

| Name and address of each shareholder or former shareholder required to consent to the election. (see instructions) | K Shareholders' Consent Statement | L Stock owned or percentage of ownership (see instructions) | | M Social security number or employer identification number (see instructions) | N Shareholder's tax year ends (month and day) |
|---|---|---|---|---|---|
| | | Number of shares or percentage of ownership | Date(s) acquired | | |
| MASSIMO GAMBELLA 664 FLANDERS DR VALLEY STREAM    NY 11581 | *[signature]* 8/3/15 | 100,000 | 01/15/13 | ███5941 | 12/31 |

↑

100 %
OWNER

Form 2553 (Rev. 12-2013)

TIFFANY   *EXHIBIT*

*E*

**Form 4506**

(November 2021)

Department of the Treasury
Internal Revenue Service

## Request for Copy of Tax Return

▶ Do not sign this form unless all applicable lines have been completed.
▶ Request may be rejected if the form is incomplete or illegible.
▶ For more information about Form 4506, visit *www.irs.gov/form4506.*

OMB No. 1545-0429

**Tip: Get faster service:** Online at www.irs.gov, Get Your Tax Record (Get Transcript) or by calling 1-800-908-9946 for specialized assistance. We have teams available to assist. Note: Taxpayers may register to use Get Transcript to view, print, or download the following transcript types: Tax Return Transcript (shows most line items including Adjusted Gross Income (AGI) from your original Form 1040-series tax return as filed, along with any forms and schedules), Tax Account Transcript (shows basic data such as return type, marital status, AGI, taxable income and all payment types), Record of Account Transcript (combines the tax return and tax account transcripts into one complete transcript), Wage and Income Transcript (shows data from information returns we receive such as Forms W-2, 1099, 1098 and Form 5498), and Verification of Non-filing Letter (provides proof that the IRS has no record of a filed Form 1040-series tax return for the year you request).

| 1a Name shown on tax return. If a joint return, enter the name shown first. | 1b First social security number on tax return, individual taxpayer identification number, or employer identification number (see instructions) |
|---|---|
| ROSSO UPTOWN LTD | 42-1806292 |
| 2a If a joint return, enter spouse's name shown on tax return. | 2b Second social security number or individual taxpayer identification number if joint tax return |

**3** Current name, address (including apt., room, or suite no.), city, state, and ZIP code (see instructions)

ROSSO UPTOWN LTD. 52 MAIN STREET, PORT WASHINGTON, NY 11050-2952

**4** Previous address shown on the last return filed if different from line 3 (see instructions)

**5** If the tax return is to be mailed to a third party (such as a mortgage company), enter the third party's name, address, and telephone number.

MOSER LAW FIRM PC, 5 E MAIN STREET, HUNTINGTON, NY 11743

**Caution:** If the tax return is being sent to the third party, ensure that lines 5 through 7 are completed before signing. (see instructions).

**6 Tax return requested.** Form 1040, 1120, 941, etc. and all attachments as originally submitted to the IRS, including Form(s) W-2, schedules, or amended returns. Copies of Forms 1040, 1040A, and 1040EZ are generally available for 7 years from filing before they are destroyed by law. Other returns may be available for a longer period of time. Enter only one return number. If you need more than one type of return, you must complete another Form 4506.  ▶ _1120 and all attachments_

**Note:** If the copies must be certified for court or administrative proceedings, check here . . . . . . . . . . . . ☑

**7** Year or period requested. Enter the ending date of the tax year or period using the mm/dd/yyyy format (see instructions).

| 12 / 31 / 2015 | 12 / 31 / 2016 | 12 / 31 / 2017 | 12 / 31 / 2018 |
|---|---|---|---|
| (CLOSED) 12 / 31 / 2019 | (CLOSED) 12 / 31 / 2020 | __ / __ / ____ | __ / __ / ____ |

**8** Fee. There is a $43 fee for each return requested. Full payment must be included with your request or it will be rejected. Make your check or money order payable to "United States Treasury." Enter your SSN, ITIN, or EIN and "Form 4506 request" on your check or money order.

| a Cost for each return . . . . . . . . . . . . . . . . . . . . . | $ | 43.00 |
|---|---|---|
| b Number of returns requested on line 7 . . . . . . . . . . . | | 6 |
| c Total cost. Multiply line 8a by line 8b . . . . . . . . . . . | $ | 258.00 |

**9** If we cannot find the tax return, we will refund the fee. If the refund should go to the third party listed on line 5, check here . . . . . . ☐

**Caution:** Do not sign this form unless all applicable lines have been completed.

**Signature of taxpayer(s).** I declare that I am either the taxpayer whose name is shown on line 1a or 2a, or a person authorized to obtain the tax return requested. If the request applies to a joint return, at least one spouse must sign. If signed by a corporate officer, 1 percent or more shareholder, partner, managing member, guardian, tax matters partner, executor, receiver, administrator, trustee, or party other than the taxpayer, I certify that I have the authority to execute Form 4506 on behalf of the taxpayer. Note: This form must be received by IRS within 120 days of the signature date.

☑ **Signatory attests that he/she has read the attestation clause and upon so reading declares that he/she has the authority to sign the Form 4506.** See instructions.

Phone number of taxpayer on line 1a or 2a

**Sign Here**

| Signature (see instructions) | 7/31/2022 Date |
|---|---|
| MASSIMO GAMMELLA  Print/Type name | PRESIDENT  Title (if line 1a above is a corporation, partnership, estate, or trust) |
| Spouse's signature | Date |
| Print/Type name | |

**For Privacy Act and Paperwork Reduction Act Notice, see page 2.**    Cat. No. 41721E    Form **4506** (Rev. 11-2021)



13.    Defendant Michael Tizzano is a natural person who resides in Nassau County, New York.

14.    Upon information and belief, Michael Tizzano (Tizzano), at all times relevant, was a shareholder of Rosso Uptown, Ltd.

15.    Upon information and belief, Defendant Tizzano had the power to hire and fire the Plaintiffs, supervised, and controlled the work schedules and conditions of their employment, determined the rate and method of their pay, and maintained records of their employment.

16.    Upon information and belief, Defendant Tizzano exercised sufficient operational control over Rosso Uptown, Ltd. to be deemed Plaintiffs' employer.

**TIZZANO EXHIBIT F**

**1 OF 2**

## FACTUAL ALLEGATIONS

17.    At relevant times, Defendant Rosso Uptown, Ltd. was an employer as defined under the FLSA and NYLL.

18.    At relevant times, Defendant Gammella was an employer as defined under the FLSA and NYLL.

19.    At relevant times, Defendant Tizzano was an employer as defined under the FLSA and NYLL.

20.    At all relevant times, Defendant Rosso Uptown, Inc. has been an entity engaged in commerce as defined by the FLSA. 29 U.S.C. §§ 201 et seq.

21.    For the calendar year 2014, Rosso Uptown, Ltd. had an annual dollar volume of sales or business done of at least $500,000.

22.    For the calendar year 2015, Rosso Uptown, Ltd. had an annual dollar volume of sales or business done of at least $500,000.

23.    For the calendar year 2016, Rosso Uptown, Ltd. had an annual dollar volume of sales or business done of at least $500,000.

3

24.     For the calendar year 2017, Rosso Uptown, Ltd. had an annual dollar volume of sales or business done of at least $500,000.

*No*

25.     For the calendar year 2018, Rosso Uptown, Ltd. had an annual dollar volume of sales or business done of at least $500,000.

*No*

*TIZZANO*
*EXHIBIT*
*F*

26.     At all relevant times, the Rosso Uptown, Ltd. operated an eating or drinking place that prepared and offered food or beverages for human consumption on its premises.

### Santos Hernandez

27.     At all relevant times, Santos Hernandez was an employee of and employed by the Defendants under the FLSA and NYLL.

*2 of 2*

28.     More specifically, Mr. Hernandez was employed by Defendants from on or about March 20, 2016 until on or about July 1, 2018.

29.     Mr. Hernandez worked six days per week.

30.     Mr. Hernandez's scheduled hours were from 11 am to 10 pm on Tuesday, Wednesday, and Thursday, from 11 am until 11 pm on Friday and Saturday, and from 12 pm to 10 pm on Sunday.   Mr. Hernandez took a lunch break each day from 3pm to 4 pm.

31.     On virtually every week during his employment with the defendants, Mr. Hernandez worked at least the regularly scheduled hours (61 hours).

32.     Mr. Hernandez worked as a dishwasher and food preparer.

33.     From on or about March 20, 2016 until on or about May 31, 2017, Mr. Hernandez was paid a weekly salary, in cash, of $400.00.

34.     From on or about May 31, 2017 until on or about July 1, 2018, Mr. Hernandez was paid a weekly salary of $475, $350 of which was paid by check, and $125 of which was paid in cash.

35.     Mr. Hernandez was not compensated at the New York State Minimum wage for all

4

TIZZANO
EXHIBIT G

### 1989 Amendments

In 1989, FLSA coverage was extended to enterprises with annual sales of at least $500,000. The amendments also repealed the retail exemption, under which employees of almost all small retail enterprises were exempt from the minimum wage and overtime rates.

1 of 2

### The 1996 Small Business Job Protection Act

In 1996, Congress exempted certain computer professionals from minimum wage and overtime regulations.[92] The 1996 amendments also brought within the FLSA's minimum wage coverage all government employees employed as of April 1, 1996.

### The 2007 Increases in the Basic Minimum Wage

On May 25, 2007, President George W. Bush signed into law a supplemental appropriations bill titled the "U.S. Troop Readiness, Veterans' Care, Katrina Recovery, and Iraq Accountability Appropriations Act, 2007" (P.L. 110-28). Title VIII of the act, "Fair Minimum Wage and Tax Relief," increased the basic federal minimum wage from $5.15 to $5.85 an hour effective July 2007, from $5.85 to $6.55 an hour effective July 2008, and from $6.55 to $7.25 an hour effective July 2009.

### Break Time for Nursing Mothers

The 2010 Patient Protection and Affordable Care Act (PPACA) amended the FLSA to require covered employers to provide reasonable break time to nonexempt employees to express breast milk for a nursing child.

#### Table A-1. Federal Minimum Wage Laws

| Public Law and Date Enacted | Wage Rate | Effective Date of Wage Rate |
|---|---|---|
| P.L. 75-718, enacted June 25, 1938 | $0.25<br>0.30<br>0.40 | October 1938<br>October 1939<br>October 1945 |
| P.L. 81-393, enacted October 26, 1949 | 0.75 | January 1950 |
| P.L. 84-381, enacted August 12, 1955 | 1.00 | March 1956 |
| P.L. 87-30, enacted May 5, 1961 | 1.15<br>1.25 | September 1961<br>September 1963 |
| P.L. 89-601, enacted September 23, 1966 | 1.40<br>1.60 | February 1967<br>February 1968 |
| P.L. 93-259, enacted April 8, 1974 | 2.00<br>2.10<br>2.30 | May 1974<br>January 1975<br>January 1976 |
| P.L. 95-151, enacted November 1, 1977 | 2.65<br>2.90<br>3.10<br>3.35 | January 1978<br>January 1979<br>January 1980<br>January 1981 |
| P.L. 101-157, enacted November 17, 1989 | 3.80<br>4.25 | April 1990<br>April 1991 |

by encouraging employers to hire more workers, rather than requiring current employees to work more than 40 hours per week and pay the premium overtime rate.

Finally, under the FLSA Congress set certain conditions under which children could be employed. Not only was oppressive child labor considered immoral, as children often worked at the cost of their own health and education, but Congress also believed that the lower wages generally earned by children drove down the wages of adult workers.[6]

The FLSA extends minimum wage, overtime pay, and child labor protections to individuals "employed by an employer."[7] Congress has also "exempted" certain employers and employees from all or parts of the FLSA. For example, exemptions were provided to executive, administrative, or professional (EAP) employees; individuals employed at retail stores that did not have interstate operations, and agricultural employees. Additionally, the child labor provisions did not apply to children employed in the motion picture or theater industries.[8]

# Who Is Covered by the FLSA?

The FLSA covers employees and enterprises engaged in interstate commerce. An enterprise is covered if it has annual sales or business done of at least $500,000.[9] Regardless of the dollar volume of business, the act applies to hospitals; institutions primarily engaged in the care of the sick, aged, mentally ill, or disabled who reside on the premises; schools for children who are mentally or physically disabled or gifted; federal, state, and local governments; and preschools, elementary and secondary schools, and institutions of higher education.[10]

Although enterprises that have *less than* $500,000 in annual sales or business done are not covered by the FLSA, employees of these enterprises may be covered if they are individually engaged in interstate commerce. These employees may travel to other states for work, make phone calls or send emails to persons in other states, or handle records that are involved in interstate transactions.[11]

The $500,000 enterprise threshold has not been raised since it was enacted in 1989. Employers are required to administer dual enterprise and individual tests to determine if individual employees are covered by the act. That is, although an enterprise may not be covered if it has less than $500,000 in annual sales or business done, employees of the enterprise may be covered if they are individually engaged in interstate commerce.

The FLSA covers most, but not all, private and public sector employees. Persons who are not covered by the FLSA include the following:

---

[6] Although Congress articulated both social and economic reasons for regulating child labor, some commentators noted that President Roosevelt believed the addition of child labor provisions in the FLSA would make wage and hour provisions more palatable to Congress, thereby making FLSA enactment easier. Ibid.

[7] *Fair Labor Standards Act of 1938*, ch. 676, §§6, 7, 12, 52 Stat. 1060.

[8] Ibid., at 1067-1068.

[9] The size of an enterprise is measured by its "annual sales or business done." Annual sales or business done includes all business activities that can be measured in dollars. Thus, retailers are covered by the FLSA if their annual sales are at least $500,000. Owners of rental properties are covered if they collect at least $500,000 annually in rent. 29 C.F.R. §§779.258-779.259.

[10] 29 U.S.C. §203(s)(1).

[11] Department of Labor (DOL), *Coverage Under the Fair Labor Standards Act*, available at https://www.dol.gov agencies/whd/fact-sheets/14-flsa-coverage. (Hereinafter cited as DOL, *Coverage Under the Fair Labor Standards Act*.)



*TIFFANY EXHIBIT "H"*

## CHASE

  

### Business Signature Card

*1 of 3*

**ACCOUNT TITLE ("DEPOSITOR") (DBA(s) on the following page(s) if applicable)**
ROSSO UPTOWN LTD.

| | |
|---|---|
| ACCOUNT NUMBER | 166033950 |
| ACCOUNT TYPE | Chase BusinessSelect Checking |
| TAXPAYER ID NUMBER | 46-1608292 |
| DATE OPENED | 01/18/2013 |
| FORM OF BUSINESS | S-Corporation |
| ISSUED BY | JPMorgan Chase Bank, N.A ( 802 ) |
| | Port Washington - 228 |
| | NICHOLAS LUPI |
| | (516) 944-2942 |
| | 07/01/2024 |

**BUSINESS ADDRESS**
684 FLANDERS DR
VALLEY STREAM, NY 11581-3044
United States/US Territories

| PRIMARY ID TYPE | PRIMARY ID NUMBER | ISSUER | ISSUANCE DATE | EXPIRATION DATE |
|---|---|---|---|---|
| Website Documentation | 4346247 | NY | 01/15/2013 | |
| SECONDARY ID TYPE | SECONDARY ID NUMBER | ISSUER | ISSUANCE DATE | EXPIRATION DATE |
| Assumed Name ID | 20160222003 | NYS | 02/22/2016 | |

**ACKNOWLEDGEMENT** - By signing this Signature Card, the Depositor applies to open a deposit account at JPMorgan Chase Bank, N.A. (the "Bank"). The Depositor represents and warrants that (i) the signatures appearing below are genuine or facsimile signatures of the person(s) authorized to transact business and (ii) all necessary actions or formalities, where necessary, have been taken to authorize the named person(s) to so act. The Bank is entitled to rely on the authority of the named person(s) until written revocation of such authority is received by the Bank. The Depositor certifies that the information provided to the Bank is true to the best of its knowledge and authorizes the Bank, at its discretion, to obtain credit reports on the Depositor. The Depositor acknowledges receipt of the Bank's Deposit Account Agreement or other applicable account agreement, which include all provisions that apply to this deposit account, and other agreements and service terms for account analysis and other treasury management services if applicable, and agree to be bound by the terms and conditions contained therein as amended from time to time.

** When you give us your mobile phone number, we have your permission to contact you at that number about all your Chase or J.P. Morgan accounts. Your consent allows us to use text messaging, artificial or prerecorded voice message and automatic dialing technology for informational and account service calls, but not for telemarketing or sales calls. It may include contact from companies working on our behalf to service your accounts. Message and data rates may apply. You may contact us anytime to change these preferences.

| | PRINTED NAME | **TELEPHONE NUMBER | TAXPAYER ID # | TITLE | DATE | SIGNATURE |
|---|---|---|---|---|---|---|
| 1) | MASSIMO GAMMELLA | | | Signer | | |
| 2) | | | | | | |
| 3) | | | | | | |
| 4) | | | | | | |

M1207-01-13-CS (11/20)

  

**BUSINESS DEPOSITORY CERTIFICATE (Corporation)**

CHASE ⬣

ACCOUNT NO.  169033950

*TIZZANO*

Signature: _____ Date: _____

Title: _____

Printed Name: _____

*EXHIBIT H*

Signature: _____ Date: _____

Title: _____

Printed Name: _____

*2 of 3*

Signature: _____ Date: _____

Title: _____

Printed Name: _____

Signature: _____ Date: _____

Title: _____

Printed Name: _____

Signature: _____ Date: _____

Title: _____

Printed Name: _____

Signature: _____ Date: _____

Title: _____

Printed Name: _____

Signature: _____ Date: _____

Title: _____

Printed Name: _____

Signature: _____ Date: _____

Title: _____

Printed Name: _____

DISTRIBUTION: 1) National Account Services 2) Customer

JPMorgan Chase Bank, N.A. Member FDIC

M1 207-03-CS (11/20)







## BUSINESS DEPOSITORY CERTIFICATE (Corporation)

**CHASE**

_____NEW __X__ CHANGE

ACCOUNT NO.
169033950
ACCOUNT TITLE (DBA(s) on the following page(s) if applicable)
ROSSO UPTOWN LTD.

BANK NAME/NUMBER
JPMorgan Chase Bank, N.A ( 802 )
BRANCH NAME AND NO.
Port Washington - 228
DATE
07/01/2024
PREPARED BY
NICHOLAS LUPI
PHONE NO.
(516) 944-2942



BUSINESS ADDRESS
664 FLANDERS DR
VALLEY STREAM, NY 11581-3044
United States/US Territories

TAXPAYER ID NO.                PRODUCT TYPE
46-1806292                     Chase BusinessSelect Checking

Legal Name of Organization:   ROSSO UPTOWN, LTD.                                              (the "Organization")

State of Organization: __NY__

The individual(s) signing this Certificate hereby certifies to JPMorgan Chase Bank, N.A. (the "Bank") as follows:

- the Organization is a corporation of the type identified above, duly organized under the laws of the state of organization listed above;
- the individual signing this Certificate is the Secretary, Assistant Secretary, Acting Secretary, or President, as listed below, of the Organization; and
- the Organization has authorized all actions and agreements described in this Certificate in accordance with all requirements of law and of Organization's organizational documents and bylaws, if any, and the authorizations are now in full force and effect.

**Account Opening and Contractual Authorization**

Any of the people listed below ("Authorized Persons"), acting alone, may:

3 OF 3

- Open or close one or more accounts with the Bank at any time, subject to the Bank's deposit account agreement;
- Act on behalf of the Organization in any matter involving any of the Organization's depository accounts at the Bank;
- Sign all agreements or other documents relating to any depository accounts or other business of the Organization. Those agreements and other documents include but are not limited to funds transfer agreements, agreements for automated clearinghouse services, agreements for online services, and safe deposit agreements.

**Deposit and Withdrawal Authorization**

Each Authorized Person may deposit or withdraw the Organization's funds. Each Authorized Person may sign any and all checks, drafts, and orders drawn against any account of the Organization at the Bank, and may give instructions for account transactions without a signature, such as those initiated via electronic debit, payment, wire transfer, or other withdrawal of funds by computer, electronic or other means. The Bank is authorized to pay any checks or other transactions authorized by the Organization, even if doing so causes or increases an overdraft. Each Authorized Person may endorse for cash, collection, deposit, or negotiation any checks, drafts, notes, bills of exchange, or certificates of deposit, and order the payment or transfer of money between accounts at the Bank and other banks. Endorsements "for deposit" may be written or stamped. The Bank may accept any instrument for deposit to any depository account of the Organization without endorsement or may supply the endorsement of the Organization. The Bank is authorized to pay all checks, drafts, and orders when signed, endorsed, or authorized by any Authorized Person without inquiry as to the circumstances of issue or disposition of the proceeds and regardless of to whom such instruments are payable or endorsed, including those payable to or endorsed to the Authorized Person.

| Print Name | Title | Facsimile Signatures |
|---|---|---|
| MASSIMO GAMMELLA | Signer | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

SIGNER(S) TO BE ADDED LATER

**Facsimile Signature Authorization**
The Bank is authorized and directed to pay checks bearing any form of facsimile or computer-generated signature. If the Organization either uses or provides a signature card authorizing any facsimile or computer-generated signature, the Organization will be solely responsible for any check bearing a similar signature.

**Further Authorizations**
The Secretary, Assistant Secretary, Acting Secretary or President of the Organization, acting alone, is authorized to certify to the Bank the name, title, specimen signature and facsimile signature of any additional Authorized Person, or to instruct the Bank to remove any Authorized Person. The Bank may rely on this Certificate until it receives express written notice of a change or revocation.

FOR THE PRECEDING PURPOSES, the undersigned has signed his/her name(s) on the date indicated above.

Exemption from FATCA reporting code (if any) _____ [According to the IRS Form W-9 instructions, if you are only submitting this form for an account you hold in the United States, you may leave this field blank.]

**CERTIFICATION**
The undersigned certifies under penalties of perjury that (1) the Organization's Taxpayer Identification Number shown above is correct, and (2) the Organization is not subject to backup withholding because: (a) the Organization is exempt from backup withholding, or (b) the Organization has not been notified by the Internal Revenue Service (IRS) that it is subject to backup withholding as a result of failure to report all interest or dividends, or (c) the IRS has notified the Organization that it is no longer subject to backup withholding, and (3) the Organization is a U.S. citizen or other U.S. person (as defined in the Form W-9 instructions), and (4) the FATCA code(s) entered on this form (if any) indicating that the Organization is exempt from FATCA reporting is correct.

If the IRS has notified the Organization that it is subject to backup withholding due to underreporting interest or dividends on its tax return, cross out item 2 above.

The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

| Signature: | Signature on File | Date: | 07/01/2024 |
|---|---|---|---|
| Title: | President | | |
| Printed Name: | MASSIMO GAMMELLA | | |



<KCapellupo@nassaucountyny.gov>
Date: 6/25/24 9:05 AM (GMT-05:00)
To: michaelcapri
<michaelcapri@optonline.net>
Cc: fmtc <fmtc@nassaucountyny.gov>
Subject: RE: Food Manager Training
Certificate - Inquiry

*TITEANO
EXHIBIT I
1 OF 2*

Good Morning Michael,


I can confirm that any individual may hold
a Nassau County Food Manager Training
Certificate – the course and certification
is not limited to the owner of a food
service establishment.


The administrator of the food manager
training program will reply to you
regarding the other information you
requested.

Certificate – the course and certification is not limited to the owner of a food service establishment.

The administrator of the food manager training program will reply to you regarding the other information you requested.

TIZZANO

EXHIBIT

I

2 OF 2

Kind regards,

# Krista Capellupo, MPH

Nassau County Department of Health

Office of Food Protection

Office of Recreational Facilities

200 County Seat Dr, Mineola, NY 11501

app.nassaucountyny.gov/health/fmtc/faq.php

Nextcl...   TuttuRosso UI3   https://login.nation...   My Account Login -...   Sign In   Single Sign-On - S...   How to:

**Does my restaurant/establishment need a certified manager?**

**How long does the online course take?**

**How much does the course cost?**

**How many days is the in-person class?**

**How many certificates does my establishment need?**

TIZEANO
EXHIBIT
"L"

If the establishment is open for more than 12 hours per day, then a second manager must be certified. The more certified managers that an establishment has, the more protected that business is.

**How long does certification last?**

**What if I took food safety training elsewhere such as NYC, Suffolk County or ServSafe?**

**What if my employment changes?**

**Who is eligible for the renewal class?**

**Do I have to take an exam for the online course?**

**Where should I keep the certificate?**

acer

# RE: Food Manager Training Certificate - Inquiry

June 28, 2024  4:08 PM

fmtc     to 3 recipients                    Details

Hello

I do see a Michael Tizzano in our system linked to Pepe Rosso 24 but no certificate number information. This could be an issue with the database being cleaned out but the facility is linked to your name.

TIZZANO
EXHIBIT 'M'

**Nimmy Tsouratakis, MPH**
Training Supervisor
Program Coordinator for Food Managers
Training Certification Program

**Nassau County Department of Health**
Office of Food Protection
200 County Seat D.
Mineola, NY 11501

# ↩ Found the article; here is affidavit

June 9, 2024  6:15 PM

joan reminick                                    Details

In August of 2014, when I was a writer at Newsday, I neither asked for nor saw legal documents attesting that Michael Tizzano was an owner at Rosso Uptown in Port Washington. My guess is that I assumed he was, since the name of the place is so similar to the one where he was and remains an owner. This is to the best of my knowledge.

Joan Reminick

TIZZANO
EXHIBIT 'N'